UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ROSALEEN M. MARTINI          *
and CHRIS J. MARTINI, JR.,        *
                                     *
      Plaintiffs,                  *
                                       *
        v.                     *
                                       *      Civil Action No. 14-30152-MGM
CITY OF PITTSFIELD, BRUCE       *
COLLINGWOOD, as Commissioner of the    *
Department of Public Utilities, JAMES     *
MCGRATH, as Harbormaster, and       *
DANIEL L. BIANCHI, as Mayor of the     *
City of Pittsfield,                  *
                                       *
      Defendants.              *

MEMORANDUM AND ORDER REGARDING
DEFENDANTS' MOTION TO DISMISS
(Dkt. No. 13)

March 31, 2015

MASTROIANNI, U.S.D.J.

## I. INTRODUCTION

Rosaleen Martini and Chris Martini, Jr. ("Plaintiffs") brought this action in state court against

the City of Pittsfield ("City"), Bruce Collingwood (the Commissioner of Pittsfield's Department of

Public Utilities), James McGrath (the Harbormaster of Pittsfield), and Daniel Bianchi (the Mayor of

Pittsfield) (together, "Defendants"). On August 18, 2014, pursuant to 28 U.S.C. § 1441, Defendants

removed the action to this court because it raised a federal question under 28 U.S.C. § 1331.

Plaintiffs' claims arise out of damage to their property allegedly caused by erosion from

Onota Lake, which is owned and controlled by the City. In particular, Plaintiffs assert claims for

nuisance (Count I), inverse condemnation under M.G.L. c. 79 and M.G.L. c. 81, § 7 (Count II),

negligence (Count III), trespass (Count IV), strict liability for ultrahazardous activity (Count V), and

unauthorized taking in pais and violations of art. 10 of the Massachusetts Declaration of Rights and

the Fifth and Fourteenth Amendments of the United States Constitution (Count VI). Defendants have filed a motion to dismiss, asserting that Plaintiffs' complaint fails to state a claim upon which relief may be granted. For the following reasons, the court will grant Defendants' motion in part and deny it in part.

## II. BACKGROUND

The following facts, which are stated in a light most favorable to Plaintiffs, see Young v. Lepone, 305 F.3d 1, 8 (1st Cir. 2002), come directly from the complaint and the attachments thereto. Plaintiffs possess real property located at 377-379 Pecks Road in Pittsfield ("Premises"). (Dkt. No. 6, Compl. ¶ 8.) The City possesses real property which is a reservoir or pond known as Onota Lake, along with the dam, water rights, and water privileges. (Id. ¶ 9.) In 1995, the City built a replacement dam at Onota Lake to control its flow of water. (Id. ¶ 10.) As a result, however, "water that had previously been diverted away from the Premises was directed at the Premises" and "[t]he flow from the newly constructed dam began to wash away portions of the Premises." (Id.) In 1996, after Plaintiffs complained, the City "installed temporary rip rap (stones piled against an embankment to prevent erosion) as an attempt to control the erosion of the Premises." (Id. ¶ 11.) In 2007, "the City, by and through the Harbormaster, installed siphon pipes in order to draw down the Lake approximately five to six feet," but "[t]his caused further erosion to the Premises." (Id. ¶ 12.)

In 2011, "Plaintiffs became aware that the temporary rip rap installed by the City was failing and [that] the Premises was undergoing continuing erosion." (Id. ¶ 13.) Thereafter, Plaintiffs notified the City, which "inspected the premises and acknowledged that the Premises were continuing to erode." (Id.) Around this time, Plaintiffs also "noticed that the erosion of the Premises was endangering structures thereon, including but not limited to Plaintiffs' fence and

garage." (Id.) "In or about 2012 and 2013, the City, Commissioner, and Harbormaster made verbal promises and agreements to conduct repairs to the rip rap at the Premises to prevent additional erosion to the Premises." (Id. ¶ 14.) In 2014, however, "Plaintiffs were notified that the City did not have the funds to repair the rip rap and, consequently, no efforts would be made to prevent further erosion to the Premises." (Id. ¶ 15.)

On June 24, 2014, Chris Martini, through counsel, sent a letter to Collingwood, McGrath, and Bianchi (in their capacities as Commissioner, Harbormaster, and Mayor, respectively) explaining he "has suffered and continues to suffer property damage as a result of the negligent acts and omissions of the Pittsfield Department of Public Works, the Harbormaster James McGrath, and the City of Pittsfield." (Dkt. No. 6, Compl., Ex. C.) He also explained the letter was "being sent pursuant to Massachusetts General Laws, Chapter 79 Section 10." (Id.) In addition, the letter described the replacement dam in 1995, the erosion to the Premises, and promises that the rip rap would be installed to "control the erosion taking place." (Id.) The letter further asserted "[t]he damages suffered by Mr. Martini amount to an unauthorized taking in pais" and that "the City of Pittsfield, the Department of Public Works, and the Harbormaster are liable for the damages suffered by Mr. Martini due to their continuing negligent acts and omissions."[1] On July 22, 2014, Chris Martini, through counsel, sent another letter to the same individuals, as well as Kathleen Degnan, the City Solicitor of Pittsfield, explaining that because he had not received a response to first letter, he intended to file a complaint (which he attached) in Berkshire Superior Court by July 25, 2014. (Dkt. No. 6, Compl., Ex. D.)

On July 31, 2014, Plaintiffs filed their complaint in Berkshire Superior Court. (Dkt. No. 6, State Ct. R.) As mentioned, Defendants removed the action to this court on August 18, 2014 pursuant to 28 U.S.C. § 1441 and subsequently filed a motion to dismiss.

---

[1] The letter concluded by demanding that a rip rap be installed immediately as well as "the payment of $20,000.00 for the loss of [Mr. Martini's] property due to the continuing erosion caused by the redirection of drainage water." (Id.)

III.     STANDARD OF REVIEW

When confronted with a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must accept the well-pleaded allegations of the complaint as true, drawing all reasonable inferences in favor of the plaintiff.  See S.E.C. v. Tambone, 597 F.3d 436, 441 (1st Cir. 2010).  A complaint that states a plausible claim for relief, on its face, will survive a motion to dismiss.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The Supreme Court has explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.


IV.     ANALYSIS

Defendants seek dismissal of Plaintiffs' complaint in its entirety on a number of grounds. Because this court's jurisdiction under 28 U.S.C. § 1331 is predicated on Plaintiffs' federal constitutional claims, the court will first address Defendants' arguments targeting those claims.


A.  Federal Constitutional Claims (Count VI)

In Count VI, Plaintiffs assert claims for a Fifth Amendment taking and violation of the Due Process Clause.[2]  Defendants argue the claims are not ripe and subject to dismissal, because Plaintiffs failed to exhaust their state remedies pursuant to Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 195 (1985).  Defendants also argue the claims are barred by the statute of limitations because they accrued over three years before Plaintiffs brought this action.  Defendants next argue that Plaintiffs failed to state a procedural due process claim because M.G.L. c. 79 provides all the process that is due.  In addition, Defendants argue, to

---

[2] Plaintiffs failed to cite in their complaint 42 U.S.C. § 1983, which provides a private right of action for the deprivation of constitutional rights; however, in their opposition to Defendants' motion to dismiss they rely on that statute. Accordingly, the court will analyze these claims under that framework.

the extent Plaintiffs assert a substantive due process claim, the facts alleged are not sufficiently egregious as to "shock the conscience." Defendants further contend Plaintiffs have not alleged sufficient facts to invoke municipal liability.

In response, Plaintiffs argue they attempted to exhaust their remedies in state court but were thwarted by Defendants' removal of the action to this forum. Plaintiffs also contend the claims are timely based on a "continuing violation" theory, their discovery of additional erosion in 2011, and the City's promises to fix the issue. Plaintiffs further argue they sufficiently alleged both procedural and substantive due process violations and adequate facts to support municipal liability.

1.    State-Exhaustion Requirement

The Supreme Court in Williamson County held that Fifth Amendment takings claims are not ripe in federal court until the plaintiff has first sought "compensation through the procedures the State has provided for doing so." Williamson County, 473 U.S. at 194. The Court explained that "[t]he Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation." Id. Accordingly, "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." Id. at 195.[3]

While this ripeness requirement may, at first glance, appear to constitute an Article III jurisdictional limitation, the Supreme Court has made clear that it is merely a prudential limitation. See Horne v. Dep't of Agriculture, 133 S.Ct. 2053, 2062 (2013) ("Although we often refer to this consideration as 'prudential ripeness,' . . . we have recognized that it is not, strictly speaking, jurisdictional.") (citation omitted)); Stop the Beach Renourishment, Inc. v. Florida Dep't of

---

[3] The same state-exhaustion requirement applies to procedural due process claims which are merely recast versions of the Fifth Amendment takings claims, as is true here. See Downing/Salt Pond Partners L.P. v. Rhode Island and Providence Plantations, 643 F.3d 16, 28 (1st Cir. 2011) ("[A] plaintiff cannot, merely by recasting its takings claim 'in the raiment of a due process violation,' evade the Williamson County ripeness requirements." (quoting Deniz v. Municipality of Guaynabo, 285 F.3d 142, 149 (1st Cir. 2002))).

Environmental Protection, 560 U.S. 702, 729 & n.10 (2010) (noting that the Williamson County ripeness objection is not jurisdictional and "the claim is ripe insofar as Article III standing is concerned, since (accepting petitioner's version of Florida law as true) petitioner has been deprived of property."); Suitum v. Tahoe Regional Planning Agency, 520 U.S. 725, 733-34 (1997) (describing the Williamson County state-exhaustion requirement as a "prudential ripeness" hurdle); Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1012-13 (1992). Accordingly, "[u]nlike Article III requirements—which must be satisfied by the parties before judicial consideration is appropriate— the relevant prudential factors that counsel against hearing [a] case are subject to 'countervailing considerations [that] may outweigh the concerns underlying the usual reluctance to exert judicial power.'" United States v. Windsor, 133 S.Ct. 2675, 2687 (2013) (quoting Warth v. Seldin, 422 U.S. 490, 500-501 (1975)); see also Athanasiou v. Town of Westhampton, 30 F.Supp.3d 84, 88 (D. Mass. 2014) ("Whereas an absence of subject-matter jurisdiction operates as an absolute bar on the power of a federal court to hear a case, prudential doctrines entail judicially self-imposed limits on the exercise of federal jurisdiction.").

The circumstances of this case, the court concludes, raise such "countervailing considerations" so that the state-exhaustion requirement should not bar this claim. In particular, as was true in Athanasiou, Plaintiffs originally brought this action, including their state-law inverse condemnation claim under M.G.L. c. 79, in state court, but Defendants' removal prevented them from exhausting their remedies there. See Athanasiou, 30 F.Supp.3d at 88. At the hearing on the instant motion, Defendants asserted that Plaintiffs should have first brought their claim under M.G.L. c. 79 in state court and, only after that claim was adjudicated, then pursued their Fifth Amendment claim. But such an approach is entirely at odds with the Supreme Court's teachings. In San Remo Hotel, L.P. v. City & Cnty. of San Francisco, Cal., 545 U.S. 323, 346 (2005), the Supreme Court held that a state court may hear "simultaneously a plaintiff's request for compensation under

state law and the claim that, in the alternative, the denial of compensation would violate the Fifth Amendment of the Federal Constitution." The Court continued: "Reading Williamson County to preclude plaintiffs from raising such claims in the alternative would erroneously interpret our cases as requiring property owners to 'resort to piecemeal litigation or otherwise unfair procedures.'" Id. (quoting MacDonald, Sommer & Frates v. Yolo Cnty., 477 U.S. 340, 350 n.7 (1986)). "Thus," as the Athanasiou court explained, "Plaintiffs cannot be blamed for choosing to assert their Fifth Amendment claim in state court along with their state-law claim." Athanasiou, 30 F.Supp.3d at 88.

A number of courts have taken the same approach, concluding that a contrary result would countenance unfair manipulation of litigation tactics by defendants. See Sherman v. Town of Chester, 752 F.3d 554, 564 (2d Cir. 2014); Sansotta v. Town of Nags Head, 724 F.3d 533, 545-47 (4th Cir. 2013); River North Properties, LLC v. The City & Cnty. of Denver, 2014 WL 1247813, at *7-9 (D.Colo. March 26, 2014); Merrill v. Summit Cnty., 2009 WL 530569, at *3 (D. Utah March 2, 2009). In particular, the Fourth Circuit in Sansotta explained that the Supreme Court's reasoning in Lapides v. Bd. of Regents of the University System of Georgia, 535 U.S. 613, 619 (2002)—in which it held that a state cannot both invoke federal jurisdiction by removing a case to federal court while also seeking to deny the judicial power of the United States by asserting Eleventh Amendment state sovereign immunity—provides "an apt analogy." Sansotta, 724 F.3d at 545-46. "Based on this ability for a state potentially to manipulate litigation, the Court [in Lapides] held that 'removal is a form of voluntary invocation of a federal court's jurisdiction sufficient to waive the State's otherwise valid objection to litigation of a matter . . . in a federal forum.'" Id. at 546 (quoting Lapides, 535 U.S. at 624). "[I]f we substitute 'the Williamson County state-litigation requirement' for 'Eleventh Amendment immunity,'" the Fourth Circuit explained, "the logic is precisely the same." Id.

The court is persuaded by this analysis. Accordingly, in light of Defendants' removal of the action to this forum, the court concludes that they have waived the <u>Williamson County</u> state-exhaustion requirement.

2.      <u>Statute of Limitations</u>

"Section 1983 does not contain a built-in statute of limitations. . . . Thus, a federal court called upon to adjudicate a section 1983 claim ordinarily must borrow from the forum state's limitation period governing personal injury causes of action." <u>Nieves v. McSweeney</u>, 241 F.3d 46, 51 (1st Cir. 2001) (internal citation omitted). The three-year limitations period for personal injury actions under M.G.L. c. 260, §2A, therefore, applies to Plaintiffs' § 1983 claims. <u>See id.</u> Although "the length of the [limitations] period and tolling doctrine" are governed by state law, "federal law governs the date on which a cause of action accrues (<u>i.e.</u>, when the statute begins to run)." <u>Rivera-Ramos v. Roman</u>, 156 F.3d 276, 282 (1st Cir. 1998).

Generally, "'[i]n a § 1983 case concerning the unlawful taking of property, the statute of limitations begins to run on the date of the wrongful appropriation.'" <u>Vistamar, Inc. v. Fagundo-Fagundo</u>, 430 F.3d 66, 70 (1st Cir. 2005) (quoting <u>Altair Corp. v. Pesquera de Busquets</u>, 769 F.2d 30, 32 (1st Cir. 1985)). The Supreme Court has held, however, that in cases such as this where property is alleged to have been taken gradually due to government-induced flooding, the statute of limitations does not accrue "until the situation becomes stabilized," that is, "until the consequences of inundation have so manifested themselves that a final account may be struck." <u>United States v. Dickinson</u>, 331 U.S. 745, 749 (1947); <u>see also</u> <u>Banks v. United States</u>, 314 F.3d 1304, 1308 (Fed.Cir. 2003) ("[S]tabilization occurs when it becomes clear that the gradual process set into motion by the government has effected a permanent taking, not when the process has ceased or when the entire extent of the damage is determined." (quoting <u>Boling v. United States</u>, 220 F.3d 1365, 1370-71 (Fed.Cir. 2000))). The Supreme Court reasoned that "[i]f suit must be brought, lest [the landowner]

jeopardize his rights, as soon as his land is invaded, other contingencies would be running against him—for instance, the uncertainty of the damage and the risk of res judicata against recovering later for damage as yet uncertain." Dickinson, 331 U.S. at 749.

In this case, it is unclear exactly when (or if) the situation became "stabilized" and, thus, when Plaintiffs' Fifth Amendment claim accrued. Defendants argue the claim "accrued in 1995 or 1996, and certainly prior to July 31, 2011," which was three years prior to the commencement of this action. (Dkt. No. 14, Mem. of Law in Supp. of the Mot. to Dismiss by the Defs. at 16.) But, according to the complaint, while the original flooding began in 1995, it was apparently remedied in 1996 by the installation of rip rap. It was not until 2007, Plaintiffs allege, that the premises underwent further erosion after the City installed siphon pipes to draw down the lake. Accordingly, the two discrete events—the replacement of the dam in 1995 and the installation of siphon pipes in 2007—may be sufficiently attenuated as to represent separate occurrences of takings. In any event, the Supreme Court explained in Dickinson that "when the Government chooses not to condemn land but to bring about a taking by a continuing process of physical events, the owner is not required to resort either to piecemeal or to premature litigation to ascertain the just compensation for what is really 'taken.'" Id. at 749. Defendants' contention that Plaintiffs should have brought their takings claim shortly after 1995 would appear to require just such piecemeal or premature litigation.

The court also notes that Plaintiffs did not become aware of the additional erosion and failure of the rip rap until 2011. See, e.g., Cao v. Puerto Rico, 525 F.3d 112, 115 (1st Cir. 2008) ("[A] § 1983 statute of limitations ordinarily accrues when the aggrieved person 'knows, or has reason to know, of the injury on which the action is based.'" (quoting Carreras-Rosa v. Alves-Cruz, 127 F.3d 172, 174 (1st Cir. 1997))). Moreover, in 2012 and 2013, the City promised to repair the rip rap in order to prevent further erosion but only informed Plaintiffs in 2014 that such repairs would not

occur.  In this sense, the situation is similar to that in <u>Applegate v. United States</u>, 25 F.3d 1579

(Fed.Cir. 1994).  In that case, private shoreline slowly receded due to an Army Corps of Engineers

project, but the landowners were repeatedly promised the construction of a sand transfer plant from

which "the landowners would encounter little, if any, permanent destruction of their shoreline

property." <u>Id.</u> at 1580, 1582.  The Federal Circuit explained that "[w]ith promises of a sand transfer

plant . . . the landowners did not know when or if their land would be permanently destroyed" and,

thus, "uncertainty has stayed accrual of the claim." <u>Id.</u> at 1582-83; <u>see</u> <u>also</u> <u>Banks v. United States</u>,

314 F.3d 1304, 1309-1310 (Fed.Cir. 2003) (holding that, because of Army Corps of Engineers'

efforts to mitigate erosion, landowners were uncertain as to the permanence of the taking and thus

timely brought their claim).

Looking at the facts in the light most favorable to Plaintiffs, the court cannot conclude that

Plaintiffs' takings claim accrued before July 31, 2011.  The court therefore will not dismiss this claim

on statute of limitations grounds.

3.    <u>Due Process</u>

"The Due Process Clause of the Fourteenth Amendment, which prohibits a state from

depriving any person of 'life, liberty, or property, without due process of law,' U.S. Const. amend.

XIV, § 1, has both a substantive and a procedural component." <u>Gonzalez-Fuentes v. Molina</u>, 607

F.3d 864, 879 (1st Cir. 2010).  As the Supreme Court has explained, "[i]n procedural due process

claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or

property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an

interest <u>without</u> <u>due</u> <u>process</u> <u>of</u> <u>law</u>." <u>Zinermon v. Burch</u>, 494 U.S. 113, 125 (1990) (emphasis in

original).  On the other hand, "[t]he substantive component of due process protects against certain

government actions regardless of the fairness of the procedures used to implement them."

<u>Gonzalez-Fuentes</u>, 607 F.3d at 880 (quoting <u>Souza v. Pina</u>, 53 F.3d 423, 425-26 (1st Cir. 1995)).

"In order to establish a procedural due process claim under section 1983, a plaintiff 'must allege first that it has a property interest as defined by state law and, second, that the defendants, acting under color of state law, deprived it of that property interest without constitutionally adequate process.'" Marrero-Gutierrez v. Molina, 491 F.3d 1, 8 (1st Cir. 2007) (quoting PFZ Props., Inc. v. Rodriguez, 928 F.2d 28, 30 (1st Cir. 1991)).  Here, the court agrees with Defendants that Plaintiffs' procedural due process claim fails at the second prong.  It is well established that, with regard to governmental takings, "the compensation need not be paid in advance or at the time of the taking, as long as there is a procedure in place at the time of the taking that is 'reasonable, certain and adequate . . . for obtaining compensation.'" Downing/Salt Pond Partners L.P. v. Rhode Island & Providence Plantations, 643 F.3d 16, 20 (1st Cir. 2011) (quoting Williamson County, 473 U.S. at 194)); see also Williamson County, 473 U.S. at 195 n.14 ("[T]he Just Compensation Clause has never been held to require pretaking process or compensation.").  In Massachusetts, that procedure is available through M.G.L. c. 79, which permits "challenges to both the validity of a taking and the amount of compensation." Kelly v. Day, 585 F.Supp.2d 211, 215 (D. Mass. 2008).  Accordingly, as the court explained in Tomaselli v. Beaulieu, 967 F.Supp.2d 423, 447 (D. Mass. 2013), the existence of such a procedural scheme "precludes the plaintiffs' procedural due process claim under § 1983." See also Presley v. City of Charlottesville, 464 F.3d 480, 490 (4th Cir. 2006) ("[W]hen the alleged deprivation is effectively a physical taking, procedural due process is satisfied so long as private property owners may pursue meaningful postdeprivation procedures to recover just compensation."); Pande Cameron & Co. of Seattle, Inc. v. Central Puget Sound Reg'l Transit Auth., 610 F.Supp.2d 1288, 1309 (W.D. Wash. 2009) ("[T]he Just Compensation Clause of the Fifth Amendment to the United States Constitution does not require pre-taking process or compensation: a state inverse condemnation action is all the procedure that is due if a property owner contends the

government has taken his or her property."). The court will therefore dismiss that portion of Count VI which asserts a procedural due process claim.

The court also agrees with Defendants that the allegations here do not rise to the level of a substantive due process violation. "State conduct violates an individual's substantive-due-process rights when it is 'so brutal, demeaning, and harmful that it is shocking to the conscience.'" Elena v. Municipality of San Juan, 677 F.3d 1, 7-8 (1st Cir. 2012) (quoting Maymi v. P.R. Ports Auth., 515 F.3d 20, 30 (1st Cir. 2008)); see also Freeman v. Town of Hudson, 714 F.3d 29, 40 (1st Cir. 2013) ("[Substantive due process] claims are limited to government action that, by its very nature, shock[s] the conscience . . . and [are] reserve[d] . . . for truly horrendous situations." (internal quotation marks and citations omitted)); Harron v. Town of Franklin, 660 F.3d 531, 536 (1st Cir. 2011) ("[T]he test is primarily concerned with violations of personal rights so severe[,] so disproportionate to the need presented, and so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience." (quoting Gonzalez-Fuentes, 607 F.3d at 881)). Plaintiffs argue that "[p]roof that a land-use decision was motivated by personal gain, individual discriminatory intent, or political considerations can form the basis for [a substantive due process] claim." (Dkt. No. 15, Opp'n and Mem. of Law of the Pls. at 14.) But even if that is so, Plaintiffs' complaint is completely devoid of such allegations. Accordingly, the court will also dismiss that portion of Count VI which asserts a substantive due process claim.[4]

---

[4] In addition, the court will dismiss Plaintiffs' state due-process claims brought under art. 10 of the Massachusetts Declaration of rights because Plaintiffs have not sufficiently demonstrated the state-law provisions provide greater protection in this context. See, e.g., Christensen v. Kingston Sch. Comm., 360 F.Supp.2d 212, 215 n.1 (D. Mass. 2005) (noting that "the federal and Massachusetts standards for a procedural due process analysis are identical" and treating the federal and state substantive due process claims identically because the plaintiff had not argued "that the Massachusetts Declaration of Rights provides greater substantive protections in this context" (internal quotation marks omitted) (citing Liability Investigative Fund Effort, Inc. v. Massachusetts Med. Prof. Ins. Ass'n, 636 N.E.2d 1317, 1322 (Mass. 1994))); see also Gillespie v. City of Northampton, 950 N.E.2d 377, 382 n.12 (Mass. 2011).

4.    <u>Municipal Liability</u>

"[A] municipality cannot be held liable for the constitutional violations of municipal employees on a <u>respondeat</u> <u>superior</u> theory." <u>Rodriguez-Garcia v. Miranda-Marin</u>, 610 F.3d 756, 769 (1st Cir. 2010) (citing <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 691 (1978)). "Instead, liability attaches to a municipality under § 1983 'only if the violation occurs pursuant to an official policy or custom.'" <u>Id.</u> (quoting <u>Welch v. Ciampa</u>, 542 F.3d 927, 941 (1st Cir. 2008)). "A plaintiff can establish an official policy," however, "'by showing that the alleged constitutional injury was caused by . . . a person with final policymaking authority,'" even based on a single decision by such a final policymaker. <u>Id.</u> (quoting <u>Welch</u>, 542 F.3d at 941). In addition, a plaintiff may also point to a municipality's custom or practice that is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." <u>Monell</u>, 436 U.S. at 691 (quoting <u>Adickes v. S. H. Kress & Co.</u>, 398 U.S. 144, 167-68 (1970)).

In this case, although Plaintiffs correctly identify this standard in their brief, their complaint fails to allege any facts reflecting an official policy or custom which would permit municipal liability. Despite this failure, however, the court finds it unlikely that the City's actions with regard to Onota Lake were not tied to an official policy or custom or the decision of a final policymaker. Accordingly, the court will dismiss that portion of Count VI which asserts a § 1983 takings claim against the City[5] without prejudice and grant Plaintiffs leave to amend their complaint in case additional facts exist to support allegations of municipal liability. <u>See</u> Charles Alan Wright, Arthur

---

[5] The court notes that Plaintiffs did not indicate in their complaint whether Collingwood, McGrath, and Bianchi are being sued in their individual capacities, their official capacities, or both. They explain in their brief, however, that these defendants are named in both their individual and official capacities. The court will therefore treat Plaintiffs' complaint as asserting individual-capacity claims, <u>see</u> <u>Powell v. Alexander</u>, 391 F.3d 1, 22 (1st Cir. 2004) (adopting the "course of proceedings" test); official-capacity claims, however, would be redundant since Plaintiffs also name the City of Pittsfield and such official-capacity claims are actually against the entity itself, <u>see</u>, <u>e.g.</u>, <u>Decotiis v. Whittemore</u>, 635 F.3d 22, 38 n.19 (1st Cir. 2011). The court also notes that Defendants have not yet raised a qualified immunity defense but, instead, opted to "reserve on this issue given the lack of sufficient facts." (Dkt. No. 14, Mem. of Law in Supp. of the Mot. to Dismiss at 19.) As to Bianchi in particular, Defendants are correct that the complaint fails to allege any facts against him whatsoever. Accordingly, the court will also dismiss all claims against Bianchi but without prejudice to Plaintiffs reasserting certain claims against him, based on specific allegations, in any amended complaint.

R. Miller & Mary Kay Kane, <u>Federal Practice and Procedure</u> § 1483 (3d ed. 2010) ("Ideally, if it is at all possible that the party against whom a dismissal is directed can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend.").

B. <u>State Takings Claims (Counts II and VI)</u>

Plaintiffs assert an inverse condemnation[6] claim under M.G.L. c. 79 and M.G.L. c. 81, § 7 in Count II as well as a taking in pais claim under art. 10 of the Massachusetts Declaration of Rights in Count VI. The Supreme Judicial Court has explained that "G.L. c. 79 . . . embodies rights guaranteed under art. 10 of the Declaration of Rights," <u>Bromfield v. Treasurer & Receiver Gen.</u>, 459 N.E.2d 445, 449 n.11 (Mass. 1983), and that Chapter 79 "creates a comprehensive scheme that defines the rights and obligations of parties involved in property takings," <u>Locator Servs. Group, Ltd. v. Treasurer & Receiver Gen.</u>, 825 N.E.2d 78, 93 (Mass. 2005); <u>see</u> <u>also</u> <u>Whitehouse v. Town of Sherborn</u>, 419 N.E.2d 293, 297 (Mass. App. Ct. 1981) ("There is no doubt that by enacting c. 79, the Legislature meant to fashion an exclusive statutory remedy for takings made thereunder . . . ."); <u>Kelly</u>, 585 F.Supp.2d at 215 ("In Massachusetts, M.G.L. c. 79 is the exclusive remedy for challenging the exercise of eminent domain."). Accordingly, the court will analyze Plaintiffs' inverse condemnation claim under M.G.L. c. 79 and will dismiss as duplicative their takings claims brought directly under the Massachusetts Declaration of Rights.[7]

Defendants seek dismissal of this claim, as they did with regard to the federal takings claim, on the ground that it is untimely. MASS. GEN. LAWS ch. 79, § 10 authorizes damages when real estate "has been taken for the public use or has been damaged by the construction, maintenance,

---

[6] "The inverse-condemnation doctrine allows a plaintiff to seek a remedy from a government actor that has bypassed the formal eminent domain process and taken property from the plaintiff." <u>Elena</u>, 677 F.3d at 7 n.9. In Massachusetts, as discussed below, M.G.L. c. 79, § 10 authorizes a remedy in just such a situation. <u>See</u>, <u>e.g.</u>, <u>Gilbert v. City of Cambridge</u>, 745 F.Supp. 42, 52 (D. Mass. 1990) (collecting cases).

[7] As for Plaintiffs' reference to M.G.L. c. 81, § 7, that statute relates to the acquisition of property for the purposes of a state highway. The court thus agrees with Defendants that it has no application here.

operation, alteration, repair or discontinuance of a public improvement or has been entered for a public purpose, but such taking, entry or damage was not effected by or in accordance with a formal vote." Section 10 also provides that a person whose property has been taken or damaged by a party acting on a municipality's behalf may directly petition the municipal officer or board for an award of damages. Id. Instead of directly petitioning the municipality, "[h]owever, a person entitled to compensation under G.L. c. 79 may petition the Superior Court for an assessment of damages" under M.G.L. c. 79, § 14. Meldon v. Town of Barnstable, 2006 WL 2006168, at *2 (Mass. Super. March 31, 2006) (discussing the interplay between M.G.L. c. 79 §§ 10, 14, and 16). Under section 16, "[a] petition for the assessment of damages under section fourteen may be filed within three years after the right to such damages has vested." Mass. Gen. Laws ch. 79, § 16. Accordingly, as Defendants recognize, Plaintiffs' inverse condemnation claim is governed by a three-year statute of limitations.[8] See Meldon, 2006 WL 2006168, at *3 ("Under G.L. c. 79, § 16, a person has three years from the time of a taking in which to file a claim in Superior Court pursuant to G.L. c. 79, § 14.").

The court notes the Supreme Judicial Court, in explaining that "[t]he Legislature did not intend to put the burden upon the landowner to determine when in the partial performance of a piece of work the period for bringing a petition would start to run against him," cited Dickinson, 331 U.S. 745, in which the Supreme Court held that a plaintiff may delay bringing a takings claim until the government-induced flooding "stabilized." United States Gypsum Co. v. Mystic River Bridge Auth., 106 N.E.2d 677, 684 (Mass. 1952); see also Grasso v. City of New Bedford, 2002 WL 31039718, at *12 (Mass. App. Ct. Sept. 12, 2002) (unpublished) ("The EOEA's actions, however, were ongoing in nature, and it is not apparent in looking to the pleadings whether any singular act, in

---

[8] Section 16 also provides an exception such that a landowner "whose property has been taken or injured, and who has not received notice under section eight or otherwise of the proceedings whereby he is entitled to damages at least sixty days before the expiration of such three years, may file such petition within six months after the taking possession of his property or the receipt by him of actual notice of the taking, whichever first occurs, or, if his property has not been taken, within six months after he first suffers actual injury in his property." Mass. Gen. Laws ch. 79, § 16.

and of itself, rose to the level of a taking."); cf. Blair v. Dep't of Conservation & Recreation, 932 N.E.2d 267, 274 (Mass. 2010) ("[W]e have interpreted art. 10 consistently to provide property owners the same protection afforded under the just compensation clause of the Fifth Amendment."). Moreover, as mentioned, the City repeatedly promised to fix the issue. See Mangiasi v. Town of Billerica, 1993 WL 13154164, at *3 (Mass. Land Ct. Nov. 1, 1993) ("By repeatedly reassuring Plaintiffs during this period that the matter would be taken care of, the Town acknowledged that Plaintiffs still had rights in Locus, which rights were not foreclosed by a taking, in pais or otherwise. In balancing the equities of this matter, the statute of limitations must be tolled."). The court simply cannot conclude at this point, as with the federal takings claim, that Plaintiffs' state takings claim is barred by the statute of limitations. Accordingly, Plaintiff's state inverse condemnation claim is not dismissed.

C. Massachusetts Tort Claims Act: Nuisance, Negligence, and Trespass (Counts I, III, and IV)

Plaintiff asserts claims for nuisance in Count I, negligence in Count III, and trespass in Count IV. As the parties recognize, these claims fall under the Massachusetts Tort Claims Act ("MTCA"), M.G.L. c. 258, § 1 et seq., which provides "a comprehensive statutory scheme . . . govern[ing] the liability of public employers in tort actions." Morrissey v. New England Deaconess Ass'n—Abundant Life Cmtys., Inc., 940 N.E.2d 391, 400 (Mass. 2010).

Pursuant to the MTCA, claims based on the negligent or wrongful conduct of public employees who acted within the scope of their employment may only be brought against the "public employer"—in this case, the City—and not against the individual employees; however, claims based on intentional torts may not be brought against the public employer, although they may be brought against the individual employees. See MASS. GEN. LAWS. ch. 258, §§ 2, 10(c). The MTCA also contains a "presentment" requirement, which prescribes that suits against public employers for

16

damages may only be brought if the plaintiff "first presented his claim in writing to the executive officer of such public employer within two years after the date upon which the cause of action arose, and such claim shall have been finally denied by such executive officer in writing and sent by certified or registered mail." MASS. GEN. LAWS. ch. 258, § 4. If, however, the executive officer fails "to deny such claim in writing within six months after the date upon which it is presented," this is deemed to be "a final denial of such claim," which would permit the filing of a lawsuit following presentment. Id. And, in addition to the two-year-limitations period for sending presentment, the MTCA also provides that "[n]o civil action shall be brought more than three years after the date upon which such cause of action accrued." Id.

Defendants argue these claims should be dismissed against the City because Plaintiffs failed to comply with the presentment requirements and filed their claims over three years after they accrued. Defendants also argue Plaintiffs' trespass claim against the City should be dismissed because it is an intentional trespass claim for which the MTCA provides immunity. In addition, Defendants argue the individual defendants are immune from these claims under the MTCA. Moreover, Defendants argue that, to the extent Plaintiffs have asserted an intentional trespass claim, they have alleged insufficient facts to support intent and the individual defendants are also immune from intentional torts because they have only been sued in their official capacities.

1. Presentment

As an initial matter, Plaintiffs are correct that they need not allege compliance with the presentment requirement in their complaint. See Vasys v. Metro. Dist. Comm'n, 438 N.E.2d 836, 840 (Mass. 1982) ("When a proper presentment has been made, a plaintiff's failure to include, in his complaint, an allegation that all conditions precedent have been performed, will have no effect on the outcome of the case."). In fact, however, the presentment letters, which Plaintiffs attached as

exhibits to their opposition to Defendants' motion, were also attached to their complaint. (See Dkt. No. 6, State Court Record, Ex. C and Ex. D.)

With regard to the two-year presentment statute of limitations, Plaintiffs appear to concede their claims accrued in 2011 when they discovered the additional erosion and the failure of the rip rap.[9] See Taygeta Corp. v. Varian Assocs., Inc., 763 N.E.2d 1053, 1063 (Mass. 2002) ("Ordinarily, actions in tort accrue at the time the plaintiff is injured"; however, the "'discovery rule' . . . tolls the statute of limitations until a plaintiff knows, or reasonably should have known, that it has been harmed or may have been harmed by the defendant's conduct."). Accordingly, even under Plaintiffs' version of events, they ordinarily would have been required to send presentment in 2013. See MASS. GEN. LAWS ch. 258, § 4. As explained below, however, Plaintiffs have sufficiently alleged continuing or recurring nuisance and trespass, under which property rights are invaded from time to time because of repeated wrongs resulting in new harm to the property on each occasion. See Taygeta Corp., 763 N.E.2d at 1064-65. And the Supreme Judicial Court has held that "[w]here the tortious conduct is a continuing event, the two-year presentment requirement is tolled" such that presentment is considered timely despite being sent over two years after initial accrual. Doe v. Town of Blandford, 525 N.E.2d 403, 409 (Mass. 1988). Accordingly, Plaintiffs' failure to send presentment in 2013 does not warrant dismissal of the nuisance and trespass claims against the City.

The same cannot be said for the negligence claim. First, there is case law holding that general negligence claims are not susceptible to the continuing violation doctrine; rather, the doctrine "is limited to claims of nuisance and trespass." Vander Salm v. Bailing & Assocs., Inc., 2014 WL 1117017, at *6 (D. Mass. March 18, 2014) (collecting cases). Second, in any event, the court reads the complaint as asserting a negligence claim based on affirmative conduct in 2007, i.e.,

---

[9] The court notes that the date for accrual of Plaintiffs' takings claims and their nuisance, negligence, and trespass claims are not necessarily the same. See, e.g., Ridge Line, Inc. v. United States, 346 F.3d 1346, 1355 (Fed. Cir. 2003) (distinguishing between conduct giving rise to claims for takings and that which merely rises to the level of a tort).

the installation of the siphon pipes to draw down Onota Lake, and not continuing acts up through the present. See Carpenter v. Texaco, 646 N.E.2d 398, 399 (Mass. 1995) (holding that the continuing violation doctrine "must be based on recurring tortious or unlawful conduct and is not established by the continuation of harm caused by previous but terminated tortious or unlawful conduct").

Still, Plaintiffs contend the "lulling" and "actual notice" exceptions to presentment apply. The court does not agree.

> [U]nder the "lulling" exception, the public employer will be estopped from asserting any defect in presentment, including failure to make presentment to the proper individual, if, during the conduct of the litigation and at a time when presentment still could have been made, the plaintiff was led to believe that presentment would not be an issue in the case.

Bellanti v. Boston Pub. Health Comm'n, 874 N.E.2d 439, 445 (Mass .App. Ct. 2007). Here, there are no facts indicating that Defendants made any statements to Plaintiffs during the course of this litigation indicating that presentment would not be an issue or affirmatively waiving presentment. See Federal Ins. Co. v. Boston Water & Sewer Comm'n, 583 F.Supp.2d 225, 232-33 (D. Mass. 2008) ("The lulling exception is not applicable in this case because BWSC's statements, to the extent that any were inconsistent with a presentment defense, were made prior to FIC's commencement of this lawsuit. . . . Those statements also fall short of an affirmative waiver of the presentment defense." (internal citation omitted)); Garcia v. Essex County Sheriff's Dep't, 837 N.E.2d 284, 290 (Mass. App. Ct. 2005) ("To 'lull' a plaintiff into believing that presentment is not an issue, the defendant must affirmatively indicate that the presentment requirement has been met or is waived."). "Second, under the 'actual notice' exception, the presentment requirement will be deemed fulfilled if the plaintiff can show that, despite defective presentment, the designated executive officer had actual notice of the written claim." Bellanti, 874 N.E.2d at 445. Here, Plaintiffs admit that, prior to the June 24th letter, the mayor, see M.G.L. c. 258, § 1 (defining "executive officer" as "the mayor of a

city"), did not have actual notice of any <u>written</u> claim but only, perhaps, oral notice. Accordingly, because neither the lulling nor the actual notice exceptions to the presentment rule apply and Plaintiffs have not demonstrated the applicability of any other exception, the negligence claim is barred based on the failure to send presentment within two years of the claim's accrual. <u>See</u>, <u>e.g.</u>, <u>Martin v. Commonwealth</u>, 760 N.E.2d 313, 315 (Mass. App. Ct. 2002) ("[P]resentment must be made 'in strict compliance with the statute.'" (quoting <u>Weaver v. Commonwealth</u>, 438 N.E.2d 831, 834 (Mass. 1982)). The court will therefore dismiss Count III against the City.

The nuisance and trespass claims, however, are not completely out of the woods in light of the final denial requirement. It is undisputed that the mayor never finally denied the claims contained in the presentment letters in writing.[10] Therefore, Plaintiffs were required to wait six months after sending the letters, or until December 24, 2014 at the earliest, to assert these claims against the City. <u>See</u> MASS. GEN. LAWS ch. 258, § 4; <u>see</u> <u>also</u> <u>Estate of Gavin v. Tewksbury State Hosp.</u>, 9 N.E.3d 299, 303 (Mass. 2014) ("The public employer has six months from presentment to deny the claim or reach a settlement, and a failure to respond is considered a denial. At the end of six months, the claimant may institute a civil action."). Nevertheless, "[p]resentment is not jurisdictional but [only] a 'statutory condition precedent to recovery under G.L. c. 258.'" <u>Estate of Gavin</u>, 9 N.E.3d at 303 (quoting <u>Vasys</u>, 438 N.E.2d at 840)). Thus, a failure to strictly comply with the presentment requirements does not deprive the court of subject matter jurisdiction, and courts often explain that defects in presentment may be cured even after a suit is brought. <u>See</u> <u>Vasys</u>, 438 N.E.2d at 840 ("If there is some question concerning proper presentment, and the plaintiff's complaint is filed well within § 4's two statute of limitations, the defendant's answer will so inform the plaintiff in time for any defective presentment to be cured."). Accordingly, because the nuisance and trespass claims were premature when the complaint was originally filed, the court will dismiss

---

[10] While Plaintiffs contend that Defendants' oral statements that they would not fix the issue constituted the requisite "final denial," the statute calls for both the presentment and the denial following presentment to be in writing.

Counts I and IV against the City but without prejudice to Plaintiffs reasserting these claims in an amended complaint in light of the fact that the six-month waiting period has since elapsed.[11]

2.    Statute of Limitations

In addition to asserting the two-year presentment statute of limitations, Defendants also argue the nuisance and trespass claims against the city are barred based on the MTCA's three-year statute of limitations.  See MASS. GEN. LAWS ch. 258, § 4.  As Defendants essentially conceded at the hearing on the instant motion, however, the continuing violation doctrine applies to these claims. The Supreme Judicial Court has explained that "[a]n action for a continuing nuisance allows a plaintiff whose claim otherwise would be untimely to sue where its property rights are invaded from time to time because of repeated or recurring wrongs, resulting in new harm to the property on each occasion."  Taygeta Corp., 763 N.E.2d at 1064.  "[A] continuing trespass or nuisance must be based on recurring tortious or unlawful conduct and is not established by the continuation of harm caused by previous but terminated tortious or unlawful conduct."  Id. at 1065 (quoting Carpenter, 646 N.E.2d at 399).  These claims fit comfortably within the continuing violation doctrine.  See, e.g., id. ("Taygeta's nuisance claim is based on the continuing seepage of pollutants that is still occurring within the statute of limitations.").  Accordingly, the MTCA's three-year statute of limitations does not bar the nuisance and trespass claims against the City, although any damages would be limited to those caused during the applicable limitations period.  See Harrison v. Textron, Inc., 328 N.E.2d 838, 845 (Mass. 1975).

3.    Trespass as an Intentional Tort

Defendants next assert that Plaintiffs' claim for trespass against the City is barred because Plaintiffs pled intentional trespass and M.G.L. c. 258, § 10(c) immunizes municipalities from

---

[11] Despite concluding that Plaintiffs' nuisance and trespass claims against the City must be dismissed (but without prejudice), the court will address Defendants' remaining arguments for dismissal of the claims because such arguments, if convincing, could lead the court to dismiss the claims with prejudice.  Ultimately, as discussed below, the court finds these arguments unavailing and, therefore, will permit Plaintiffs to re-allege the claims in an amended complaint.

intentional torts. Plaintiffs' complaint, however, alleges the "conditions and circumstances [giving rise to the trespass claim] were created by the negligent and/or intentional acts or omissions of Defendants." (Dkt. No. 6, Compl. ¶ 34.) Plaintiffs, therefore, have alleged both negligent and intentional trespass. See DeSanctis v. Lynn Water & Sewer Comm'n, 666 N.E.2d 1292, 1297 (Mass. 1996) ("A Plaintiff may recover under the theory of negligent trespass if the jurors determine that the defendant was negligent and that the defendant's negligent entry onto the plaintiff's land caused the plaintiff harm."); Leroy & Co. v. City of Worcester, 2013 WL 6689005, at *1 (Mass.App.Ct. 2013) (unpublished) ("An intentional 'trespass requires an affirmative voluntary act . . . and in that respect differs from negligence' or negligent trespass." (quoting United Elec. Light Co. v. Deliso Constr. Co., 52 N.E.2d 553, 556 (Mass. 1943))). Because it is undisputed that the individual defendants acted within the scope of their employment, the MTCA does not bar Plaintiffs' negligent trespass claim against the City. See MASS. GEN. LAWS. ch. 258, § 2. Plaintiffs' intentional trespass claim against the City, however, is dismissed. See MASS. GEN. LAWS. ch. 258, § 10(c).

4. Individual Defendants

    Defendants argue the nuisance, negligence, and trespass claims against the individual defendants should be dismissed because they are immune from suit under M.G.L. c. 258, § 2. Moreover, Defendants argue, to the extent the trespass claim is based on intentional conduct, it also must be dismissed because there are no allegations that these defendants made an intentional entry onto Plaintiffs' property, and Plaintiffs have sued the individual defendants in their official capacities, which means that the intentional tort immunity under M.G.L. c. 258, § 10(c) also applies to them.

    The court agrees with Defendants that M.G.L. c. 258, § 2 bars the nuisance, negligence, and negligent trespass claims against the individual defendants because they are based merely on negligent or wrongful conduct, as opposed to intentional conduct. See MASS. GEN. LAWS ch. 258, §

22

2 ("[N]o . . . public employee . . . shall be liable for any injury or loss of property or personal injury or death caused by his negligent or wrongful act or omission while acting within the scope of his office or employment . . . ."). The court also agrees with Defendants that Plaintiffs have not alleged sufficient facts to state an intentional trespass claim. See Leroy & Co., 2013 WL 6689005, at *1. Accordingly, the court will dismiss the nuisance, negligence, and negligent trespass claims against the individual Defendants. The court will also dismiss the intentional trespass claim against the individual defendants but without prejudice to Plaintiffs reasserting this claim, based on specific allegations, in an amended complaint.[12]

D. <u>Strict Liability for Ultrahazardous Activity (Count V)</u>

In Count V, Plaintiffs assert a claim for strict liability for an ultrahazardous activity, namely, the storage of water behind a dam on Defendants' property which ultimately released water flowing onto Plaintiffs' property. Defendants seek dismissal of this claim on the ground that the MTCA only provides for municipal liability for "negligent or wrongful conduct" and this theory permits liability without regard to fault. Plaintiffs respond by arguing the strict liability theory is based on common law principles and that, under such theory, property damage caused by abnormally dangerous activity constitutes "wrongful" conduct under the MTCA such that municipal liability is available.

---

[12] As for Defendants' argument that Plaintiffs have asserted official capacity claims, the court, as discussed in footnote 5 of this decision, has already deemed their complaint to assert individual-capacity claims. While Defendants point to language in the complaint stating that "at all times mentioned in this complaint, Commissioner, Harbormaster were the agents and employees of the city, and in doing the things alleged in this complaint were acting within the course and scope of such agency and employment" (Dkt. No. 6, Compl. ¶ 7), this allegation discusses whether Defendants acted within the scope of their employment, an entirely different issue than the capacity in which a person is being sued. See Hafer v. Melo, 502 U.S. 21, 26 (1991) ("[T]he phrase 'acting in their official capacities' is best understood as a reference to the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury."). Plaintiffs would be wise, however, to provide greater clarity with regard to the capacity issue in their amended complaint, should they choose to file one.

Defendants have the stronger argument.  The MTCA had the effect of waiving the Commonwealth of Massachusetts's sovereign immunity to suit (which extended to municipalities), but only in the instances allowed by the statute.  See Audette v. Commonwealth, 829 N.E.2d 248, 256 (Mass.App.Ct. 2005) ("[T]he Commmonwealth has waived sovereign immunity for certain tort actions against it pursuant to the [MTCA], and an action for ordinary or gross negligence is permitted under the [MTCA] because it constitutes 'negligent or wrongful act or omission' . . . .").  In Audette, the court held the dog bite statute, M.G.L. c. 140, § 155, which allows for strict liability, is inconsistent with the MTCA:  "The dog bite statute is a strict liability statute, imposing liability without requiring misfeasance or nonfeasance by the owner or keeper, whereas these are conditions required for an action under G.L. c. 258."  Id.  The same is true here.  Although Plaintiffs are correct that the strict liability at issue in Audette was based on a statute, whereas here it is based on a common law theory, the same analysis applies.  Because the abnormally dangerous activity theory imposes liability without regard to fault, see Clark-Aiken Co. v. Cromwell-Wright Co., 323 N.E.2d 876, 878 (Mass. 1975), and the MTCA requires some negligent or wrongful conduct for a public employer to be held liable, a municipality cannot be held liable under such a theory.[13]  Cf. Dalehite v. United States, 346 U.S. 15, 45 (1953) (holding that the United States cannot be held liable under Federal Tort Claims Act ("FTCA") under an ultrahazardous activity theory because the FTCA precludes imposition of liability if there has been no negligence or wrongful act or omission; some form of misfeasance or nonfeasance required), overruled on other grounds by Rayonier, Inc. v. United States, 352 U.S. 315 (1957); Laird v. Nelms, 406 U.S. 797, 798-799 (1972) (same).  The court will therefore dismiss Count V.

---

[13] In addition, to the extent this claim is also asserted against the individual defendants, the same result is warranted because a strict liability claim does not equate to an intentional tort, pursuant to which public employees may be held liable under M.G.L. c. 258, § 10(c).  See Hanks v. Town of Montague, 2007 WL 1202861, at *1 (Mass. App. Ct. April 24, 2007) (unpublished) (stating that the trial court's holding that "the doctrine of sovereign immunity precludes imposition of strict liability on public employers and employees" was "unassailable" in light of Audette (emphasis added)).

### V.    Conclusion

For these reasons, the court ALLOWS Defendants' motion to dismiss (Dkt. No. 13) as to that portion of Count I which asserts claims against Collingwood, McGrath, and Bianchi; Count III; those portions of Count IV which assert negligent trespass claims against Collingwood, McGrath, and Bianchi, as well as an intentional trespass claim against the City; Count V; and those portions of Count VI which assert state takings claims as well as state and federal due process claims.

The court also ALLOWS Defendants' motion but dismisses WITHOUT PREJUDICE that portion of Count I which asserts a claim against the City; that portion of Count II which asserts a claim against Bianchi; those portions of Count IV which assert intentional trespass claims against Collingwood, McGrath, and Bianchi, as well as a negligent trespass claim against the City; and those portions of Count VI which assert federal takings claims against Bianchi and the City.

The court, however, DENIES Defendants' motion as to that portion of Count II which asserts claims against Collingwood, McGrath, and the City; and that portion of Count VI which asserts federal takings claims against Collingwood and McGrath.  Plaintiffs are granted leave to file, within thirty days, an amended complaint reasserting those claims which the court has dismissed without prejudice in order to correct the deficiencies identified herein.

It is So Ordered.


   /s/ Mark G. Mastroianni     
MARK G. MASTROIANNI
United States District Judge